May it please the Court, my name is John Radjic, and I represent Mr. Phil Ivaldy. It is an honor for me to appear before you members of the second highest court in this land. Such an honor that in attendance today are various members of my family, including my mother and father, who spent a lot of money to send me to law school. I think they thought it was too much at the time, but hopefully they started to think they were right about that. That's right. Yes, sir. Also in attendance, as a courtesy to the Court, is Mr. Phil Ivaldy. Thank you. Thank you. Well, welcome. Thank you. I have a brief introductory statement to make. It shouldn't take longer than a minute and a half, and I intend to reserve the balance of my time for questions and rebuttal. The records in this case are absolutely devoid of any legitimate, nondiscriminatory business reason advanced by Boeing to address what we believe are the two linchpin issues, the number one being the transfer of younger employees out of the planning department prior to layoffs and the hiring of younger employees to do planning work. The central contention advanced by Boeing throughout this entire litigation, that the elimination of three product lines necessitated layoffs, does not address these two linchpin issues in any way. And we submit that Boeing still, after today, after they argue, you will be left with no legitimate, nondiscriminatory business reason for the transferring of younger employees out of the planning department or the hiring of younger employees to do planning work. Well, Mr. Roderick, don't we have a threshold issue with respect to the settlement agreement? We have a settlement agreement in this case. Yes, sir, we do, but we don't think that that is a binding agreement for the reasons set forth in the brief. And even if this Court found that it was a binding contract, it's our contention that Boeing has an adequate remedy at law, they can sue for breach of contract. Well, what about the argument of waiver? It still flows from the contract. It's still a matter of contract. How are we supposed to review a case where the case ostensibly has been settled? We're supposed to proceed as if this case is a live controversy? I believe that you should proceed as if he's availing himself of his substantive right to have the proceedings of the trial court reviewed by a higher court. Well, but he's waived that. And if he's waived it, how can we let a state court decide whether or not that's binding and, therefore, whether or not we have jurisdiction? Well, as pointed out in the brief, we don't think that we believe that the contract is void. Well, you said that's a matter, though, for the state court. So I understand that you're taking the position it doesn't comply with the federal statute for notice and a variety of other things. But why is it a state court would determine that? If we determine that it does comply with federal law, why wouldn't that then end the matter if it's a binding agreement? I don't believe it's still a matter of a private contract, and I don't believe that there are adequate remedies to test the viability of a contract in state court, and I don't think that the contract constitutes a waiver of a substantive right to appeal. All right. Well, you have gathered two separate points. One is you think that whatever the question of the validity of the waiver is one that we should not resolve. The second point is if we do resolve it, then you believe that the waiver is not a valid waiver. Is that right? That's correct. I don't think it's a waiver such as to the bestest court of jurisdiction. Well, is that because the settlement agreement itself is void or the waiver clause is void? I believe that they're both void. I guess my problem is, does one flow from the other or are you making separate arguments with respect to the agreement as a whole, and then even if the agreement was valid, the waiver is wrong? I believe that they're independent grounds. Well, what about, is it section 692, no, 626, the five elements that are required? That's correct. Those weren't present in the agreement. And this case law is set forth in the brief that stands for the proposition that if those grounds are not set forth in the agreement itself, the agreement is not merely voidable, it's void. Well, void or voidable, I assume that you're saying even if it's voidable, that it can't be enforced here because you're voiding it, is it? That's correct. And your grounds for that where it doesn't comply with the statute are those that you've argued in the brief. But let me ask you about one in particular. Do you think that it fails to contain a specific reference to the rights or claims arising under this chapter? That's correct. It does fail to do that. Why do you think that the reference to the complaint in the case doesn't refer to the — isn't sufficient to refer to the rights or claims arising under the chapter? Well, I believe that that statute is quite specific in terms of what has to be contained in the settlement agreement in order to waive a substantive right. And those weren't present in the agreement. In fact, they were present in an earlier faxed version of the agreement that was faxes that were passing back and forth from Boeing's attorney to Mr. Ebaldi's former attorney. There were the necessary, at least according to the statute, the necessary components present in one of those settlement agreements. But in the agreement that Mr. Ebaldi was presented with and executed, those components of 626 were not present in the final settlement agreement. Well, there's some other grounds, too. For instance, the statutes cited by Boeing in that settlement agreement purporting to support a basis for attorney's fees,  so there's an argument that there was no consideration to support the agreement. If you look closely, those statutes in the settlement agreement cited by Boeing referenced in the settlement agreement don't authorize the attorney's fees that Boeing threatened to recover from Mr. Ebaldi. Well, it cites those statutes and then says or otherwise. It does say or otherwise, whatever that means. There's been no specificity in the record in terms of what that means. I just want to be sure I understand the argument, then. Your position, as I understand it, is because the statutory provisions themselves, under which the claim has been asserted, are not recited in this, that a reference to the claims made in this litigation is insufficient under the statute. That's one of the grounds. Yes, sir. The other ground being failure of consideration. The other ground being he did not have an adequate opportunity to consult with counsel. And the third was duress. Counsel, assuming we could get around this settlement issue, I'm next concerned about the prima facie case issue. Is there a showing that he was replaced by a younger worker? Through all of the deposition testimony that has been lodged with the Court, all of the eyewitnesses consistently said that younger planners were transferred out of the planning department in advance of layoffs and that younger employees were hired to do planning work, work that was formally performed by the laid-off employees. In fact, I think it's page 11 and 12 of the reply brief. We even cite an instance where Boeing paid the laid-off workers because other employees were performing planning work, non-planners. And the testimony from the witnesses has consistently been that, based on their observations, that these employees were younger than the laid-off planners. But they were let go under the terms of the under a procedure that was approved by the collective bargaining agreement. After they removed the younger favored employees from the layoff pool, that's correct. Thank you, counsel. Thank you. Good morning, counsel. Good morning. If it please the Court, Your Honor, my name is Barbara Johnson, and I'm representing the – I represent the Boeing Corporation in this matter. This is not an overwhelmingly difficult case. The plaintiff was laid off pursuant to the provisions of the CBA. He made allegations that, in fact, Boeing was engaging in transferring younger people into nonunion positions. Despite this specious claim, he failed to present any evidence that this occurred. He himself could not identify any younger planner that was transferred out. He was unable to identify any younger planner that got a position to which he felt he was entitled. In fact, throughout this litigation, he's never defined younger planner. He has never, in any of the depositions that were taken, defined the watershed years of age 40 as the cutoff date for younger, so that as the depositions progressed, these individuals hadn't even defined younger versus older. When you asked him what, you know, what age, they'd say 60s or whatever. Well, could you be a little more specific? His deposition at ER 323 and thereafter goes through and identifies various people by name that he thought, such as Mr. Leonard, who was a younger planner, transferred to a nonunion position. And he was asked about that. And then there was Mr. Mixon, Norm Mixon, I believe, and Deborah Duff. He went through and identified over the pages quite a few. Those were throughout the 15-year period. Also, if you look at where those people were on the seniority list, they were actually above Mr. Evaldi. So even though they were younger, they were more senior in terms of the seniority provisions of the CBA. There was no testimony as to the qualifications of these individuals. Unfortunately, the appellant makes the assumption that just because you're older means that you necessarily are better than somebody that's under 40. And that's not the case. There was no evidence as to who applied for these particular positions. If there were people that were over 40 who applied, as was indicated in Ms. Plunkin's deposition, the problem is, is that a lot of these people don't want to give up union positions because they're high in seniority. They get what I would call great benefits. I understand that, but I want to keep following this through. You're saying that he didn't put forward this information. How did the discovery proceed in this? Boeing is the one who has the information largely on these folks. So, as I understood, what he was doing was identifying people that he understood to be transferred. Now, did they seek discovery to find out where the folks were on the seniority list to confirm so he couldn't give precise ages, or how did that work? The problem was, first of all, none of what your honor is now testifying to. I'm not testifying. I'm just looking. I'm sorry. I'm sorry. Was brought to your attention. This is the appellant level, and I'm the judge. I'm sorry. It looks like I'm in the witness box, but that's over there. None of this was brought in opposition to the motion for summary judgment that was before the trial court. This has only been brought up in the appellate briefs. As to discovery, what the – the appellant never did one simple interrogatory that's just said from the years of 1979 – you know, 1997 to 1999, please identify any planners that were under the age of 40 who were in the union, who were given salary positions. There was never – that interrogatory was never asked. There was never a corporate designation, deposition of an individual within the company. Well, what depositions did he have – was he attempting to obtain when the court granted summary judgment? There were – I had attended a number of the depositions. They were just co-workers of his who would sit there and say, well, yeah, I think I saw a younger planner who was promoted. But there was nobody – none of those people were people in management or people who had actually received a different job. It was none of these people. I sat through a number of the – a number of the depositions. And I'm talking about the depositions that were not taken, that had been noticed, and then they got a new magistrate, and then the dates were off. Well, he had taken a number of depositions. I believe what he was doing was he was seeking to take an additional 19 depositions. And what I'm saying is I believe the depositions that he was taking or wanted to take were merely more co-workers. There was – none of them were corporate designations of individuals in management who might have knowledge of what he was. And there were interrogatories also that had not been ruled on at the time of summary judgment. Now, first of all, those interrogatories, there were 10,040 interrogatories, all of which were – were asking various information on a thousand employees. There was no foundation lay. There was no relevancy assessment. Well, I'm not talking about deciding the merits of it, because the district court didn't decide the merits, did it? Right. And the district court – That was pending when he granted summary judgment. Right. But the district court – I'm sorry. I'm not – Yeah. I'm just suggesting that there were depositions and interrogatories because you complained that he didn't submit interrogatories. And you now tell us 10,000 were pending when the court granted summary judgment. No. What I'm saying is as opposed to doing the 10,000, there wasn't just one interrogatory that said, the interrogatory that I previously gave, identify any individuals under the age of 40 who were transferred outside the union to nonunion positions. And the trial court was correct in not allowing this. There was no motion to continue that was – Well, it didn't not allow the interrogatories or the depositions. He never ruled on them, as I understood it. Right. Okay. Let me get back to the waiver. You seem to have sent initially a proposed waiver agreement that complies with the statute, refers to the statute, says you give up your rights under the statute. And then you sent a second one that deleted all of that. Is there some explanation for that? You know, I was not involved in it. I do know that the first waiver that we sent over said to Plaintiff's counsel, advise us of any changes that you want to have made. So I assume that the second draft that was sent was in response to Plaintiff's and the changes he wanted, because we would have no reason to, to do that otherwise. So you think they've deleted the references that are required by the Act? I don't know if they're required for the Act in this circumstance, since he had no claim. The only entity that had a claim was the Boeing Company. He had lost his claim. This wasn't a case where, you know, we were in the middle of a trial or the summary judgment was pending and everybody, you know, dropped their hands and said, well, that's it. Are you dropping your argument that there's no jurisdiction because of the waiver term and the settlement agreement? No, we're not. I'm not dropping that argument. I believe that that argument is valid. I believe that the Court should not exercise jurisdiction because I think the issue is moot, because I, I think the appellant in this case executed a, a valid release in waiver. I think he would recommend it. Yeah, but it's only valid if it meets the five-part test of 626F2. Isn't that right? Right. But the only requirement that it technically did not meet was it didn't specify ADA claims. It referenced discrimination claims. But the plaintiff's complaint, I'm sorry, appellant's complaint and his EEOC claim specifically referenced only the ADEA and the DSEA. And that was incorporated? And that was incorporated in the agreement or not? I'm not sure. Well, as I understand the argument you were making, you said he didn't have any claims to waive because he'd lost them in the district court, and only Boeing had claims at the point of the waiver. I'm saying that technically he did not have a claim since he had, he had lost his claim by virtue of the decision of the trial court. So for that reason, you think it's not necessary to refer to the claims because they no longer existed? Yes. Well, that's one way to look at it. And, you know, I do want the Court to look at the timing of this. I mean, this is not a case, you know, the appellant waited 33 days, you know, before filing the, you know, after settlement agreement, before filing the appeal. Not once during that time period did he write counsel and say, you know what, fine. Well, that sounds like an argument that says if this is voidable, but he can no longer void it because he has lured us into some kind of deception. I don't think that, is that argument right in your brief? Unfortunately, I think Boeing is, it can be lured as much as anybody else, unfortunately. I mean, I think, I think, I think. Do you make that argument in the brief that it would be voidable, but if it's voidable, he voided it too late? We did an estoppel argument, whether that's the same. I don't think it's, you know, our argument was that he's estopped from asserting it at this point by virtue of the fact he waited such a significant time, time beyond the time period within which we could seek our costs and attorneys' fees. And I'm not quite sure if that addresses your. Yes. No, I think that's true. And I think even if you don't, if you, if you assume that the Court does have jurisdiction, I just, I think that the, the case that, there is no case that the appellant has in this matter. I mean, you know, it seems to me that if an individual is laid off pursuant to a CBA, he doesn't make a step to try to get a job. He can't identify any job to which he's entitled. He can't identify any individuals that he felt got a job that he shouldn't get. It's, you know, there's no claim there. They come in with statistical evidence down the line that 51 of the 58 people that were laid off were over 40 years old. You know, the whole course was over. You know, that's because the majority, 51 of the 58 people were over 40 years old. But one of the things that's a little troublesome is there seems to have been a little confusion in the Court over discovery when they switched magistrates or whoever it was. And there were, there may not have been very good interrogatories. There may not have been very good depositions. But there was a considerable amount of discovery that your opponent had requested and was pending. And the Court granted summary judgment without ever ruling on any of those requests. A couple of things. First of all, Your Honor, the appellant in his SIR reply indicated that because the documents were before the Court, the Court necessarily ruled on it. Second of all, this wasn't a sneak-up case where a complaint was filed and we waited 60 days and then we brought a summary judgment. This was a case that was brought a year and four months before we brought the summary judgment. A previous continuance for discovery had already been allowed to the appellant. The appellant didn't make a proper showing to the trial court that, as to why the discovery would be relevant, why a continuance was necessary. They didn't even request that the Court continue the matter until after the magistrate decided. And to allow all this in is to essentially say to the trial court, you know, we don't care what you did. Let's just, you know, we're going to hit the trial court and just come straight to the court of appeal. Because he had every opportunity to present his case. The Court imposed deadlines, and he didn't ask for relief from the latest deadline. And if you look at the underlying record, there was no formal request for a continuance. There was no formal request for a stay pending discovery. And it was – I don't think the trial court in any way abused its discretion in ruling. In fact, an appellant's counsel was asked, gosh, if I gave you this discovery, what would it show? And he said, I don't know, but there's a bunch of ifs. If we win the motion, maybe it'll show this. That's not a sufficient showing. And this is not a case in the early stages where he hadn't had a full opportunity to do something. The complaint was filed in September of 1999, and the summary judgment wasn't until February 2001. Well, as I understand it, there were motions that would have been completed or the discovery would have been completed, and then the magistrate disappeared somehow from this case. And they said, re-notice the motions when there's a new discovery magistrate assigned. That was January 2nd. Then you filed a summary judgment motion on the 16th, and the magistrate wasn't assigned until the 17th. He made a motion after he got the new magistrate on the 17th. They made the motion to compel the responses to interrogatories, and the summary judgment was then granted 10 days later or so without any rulings by the new magistrate. Well, first of all, the second motion as to the interrogatories wasn't filed until well after the discovery cut off. The magistrate went off and they said to him on January 2nd and said, file your motions when the new magistrate's assigned. It was assigned on the 17th. But the discovery, the interrogatories weren't sent until approximately December the 30th, where this discovery cut off, you know, meaning the time you have to do everything, by January the 15th. There was no extension of those dates. And moreover, as I said, at the summary judgment hearing, the Court invited the appellant to say, look, you know, I'm giving you a shot. What evidence, if any, might this discovery reveal? And appellant failed to make any showing whatsoever. We have to have finality in cases. I mean, if the Court sets deadlines and appellant is given ample opportunity to work, is already given one continuance to conduct discovery, I think that's a key that says, look, you know, if you think you have a valid case, you know, you better pursue it. And that wasn't done here. Thank you. Thank you, Your Honor. We don't need finality where injustice will result. Those interrogatories did not cover 10,000 names. They covered a little over 1,000. They asked for ages. Boeing refused to give that information on December 29th. They turn around almost 18 days later and provide some of that same information that the plaintiff was requesting in Exhibit E to Mike Reynolds' declaration. The plaintiff asked for the ages. Boeing refuses. They turn around and give those ages. And Mike Reynolds' declaration. And then they say the case should be dismissed because you didn't give ages. I'd like to quickly point the Court's attention to, with regard to the settlement agreement, Base Number 425 in the Appellee's Excerpts of Record. And that is a letter from Boeing's attorney to Mr. Ivaldi that confirms Mr. Ivaldi's contention that he was threatened with over $100,000 in attorney's fees. At the time, he was pressured to sign the agreement. And again, as we sit here today, we have no legitimate, non-discriminatory business reason for the transferring of younger employees out of the transfer pool or the hiring of younger employees to do planning work in place of the older laid-off planners. Thank you, counsel. Thank you. The case is arguably submitted.
judges: Reinhardt, O'scannlain, Fisher